*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHAREASE MARIE BEAUDET,

        Plaintiff-Appellant,

v

TERRY ALLAN BEAUDET,

        Defendant-Appellee.

UNPUBLISHED
November 22, 2024
9:16 AM

No. 369276
Osceola Circuit Court
LC No. 2022-016522-DO

Before: MALDONADO, P.J., and M. J. KELLY and GARRETT, JJ.

PER CURIAM.

Plaintiff, Sharease Marie Beaudet, filed for divorce from defendant, Terry Allan Beaudet, after nearly 30 years of marriage.[1] The parties requested a bench trial because they could not agree on whether a house and its surrounding lakefront property (the 13 Mile Road property) that Terry's mother deeded to them was marital property and whether Terry should pay Sharease spousal support. We hold that the trial court clearly erred when it ruled that the 13 Mile Road property, which was deeded to both Sharease and Terry during their marriage as tenants by the entirety, was not marital property. For this reason, we reverse the trial court's ruling that the property was not marital property, vacate in part the trial court's judgment of divorce on property division and spousal support, and remand for further proceedings.

## I. BACKGROUND

Sharease and Terry married on September 18, 1993, and had two children who were adults when Sharease filed a complaint for divorce on November 11, 2022. Sharease and Terry both worked full time throughout their marriage; Sharease worked various office jobs and Terry worked in road construction. Terry's job was demanding and required him to travel frequently during the week in the summer. While Terry worked out of town, Sharease took care of their home and children. During the marriage, Sharease grew very close with Terry's family. Sharease called

---

[1] Because the parties have the same last name, we refer to plaintiff and defendant by their first names.

Terry's parents "mom and dad" and saw them almost every weekend while her children were growing up. As Terry's mother, Roseann Beaudet, grew older, Sharease helped her with tasks around her home and cared for her when Terry was out of town.

Roseann testified that she and her husband bought the 13 Mile Road property in LeRoy, Michigan 30 years before the trial and that is was paid in full. After her husband died in 2019, Roseann executed a quitclaim deed and granted the property to both Terry and Sharease as co-owners while she retained a life estate.[2] The quitclaim deed specifically provided as follows:

> Grantor:    ROSEANN BEAUDET, a single woman, whose address is 16509
>             13 Mile Road, LeRoy, Michigan 49655, quit claims to:
>
> Grantee:    TERRY BEAUDET and SHAREASE BEAUDET, husband and
>             wife, whose address is 15483 18 Mile Road, LeRoy, Michigan
>             49655, as tenants by the entirety. This conveyance is subject to a
>             life estate reserved for ROSEANN BEAUDET, whose address is
>             16509 13 Mile Road, LeRoy, Michigan 49655, for and during her
>             lifetime.

Roseann testified that she signed the deed to gift her property to Terry and Sharease; but she also testified that she wanted the property to go to Terry as his inheritance. Terry testified that he discussed estate planning and inheritance with his mother, and he believed that Roseann wanted the 13 Mile Road property to go to him. According to Terry, the only reason his mother included Sharease on the deed was because Sharease was his wife. In contrast, Sharease testified that it was Terry's and Roseann's idea to put her name on the deed, and there was no question that Roseann meant to gift them both the property. Sharease believed Roseann gave them both the house because she was married to Terry and had been a member of their family since she was 17 years old. According to Terry and Sharease, while Roseann continued to live at the 13 Mile Road property, they made no improvements or payments toward the property.

In addition to the 13 Mile Road property, the parties had a marital home, vehicles, retirement accounts, personal savings and checking accounts, a student loan for their daughter, and credit card debt to divide. After the bench trial, the trial court ruled that, based on the parties' contributions to the marriage, their ages, health, earning potential, and the long-term nature of the marriage, a 50/50 division of the marital estate was equitable. The court split the parties' equity in the marital home in half, giving each party $56,000. The court awarded Sharease possession of the home and ruled that she must pay Terry for his share of the home's equity. Yet the court ordered Sharease to pay Terry only $28,000 for his share because the court considered the other $28,000 an alimony payment for the first year after the divorce.

---

[2] A life estate is a property interest "in which the owner of the interest is entitled to possess and enjoy the real estate during his or her own life or during the life of a third person or persons." *Wengel v Wengel*, 270 Mich App 86, 99; 714 NW2d 371 (2006) (quotation marks and citation omitted).

The court ruled that the 13 Mile Road property had a value of $250,000, but further concluded that it was not marital property. According to the court:

> This parcel of property was owned by [Terry's] parents prior to his marriage to [Sharease]. [Terry] argues that this was a gift to him and that it should not be part of the marital estate. The property was deeded to both parties in September of 2019 by [Terry's] mother as part of an estate plan after the death of [Terry's] father. The parties made no substantial improvements, did not pay the taxes, insurance or any other expenses for the property.

The court ordered Sharease to sign a quitclaim deed granting the property to the Terry within 30 days of the entry of the judgment of divorce.

The trial court ruled that, because Terry's employment provided the main source of income for the parties during their long-term marriage, Sharease needed spousal support to maintain her standard of living. As stated, the court granted Sharease 25% more of the equity in the marital home as alimony-in-gross,[3] which the court counted as the first year of spousal support. After the first year, the trial court ordered Terry to make monthly spousal support payments to Sharease for nine years. The trial court entered a judgment of divorce that reflected these holdings, and this appeal followed.

## II. PROPERTY DIVISION

Sharease argues that the trial court clearly erred when it ruled that the 13 Mile Road property was Terry's separate inheritance rather than part of the marital estate. We agree.

## A. STANDARD OF REVIEW

"In granting a divorce judgment, the trial court must make findings of fact and dispositional rulings." *Reed v Reed*, 265 Mich App 131, 150; 693 NW2d 825 (2005). We review a trial court's factual findings on the marital property's division for clear error. *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014). Clear error occurs "when this Court is left with the definite and firm conviction that a mistake has been made." *Id*. at 555 (quotation marks and citation omitted). "If the trial court's findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). "The trial court's dispositional ruling is discretionary and will be affirmed unless this Court is left with the firm conviction that it was inequitable." *Reed* 265 Mich App at 150.

---

[3] "[A]limony in gross is not really alimony intended for the maintenance of a spouse, but rather is in the nature of a division of property." *Staple v Staple*, 241 Mich App 562, 566; 616 NW2d 219 (2000).

## B. LEGAL PRINCIPLES

In *Cunningham v Cunningham*, 289 Mich App 195, 200-201; 795 NW2d 826 (2010), this Court explained the applicable background law:

> In any divorce action, a trial court must divide marital property between the parties and, in doing so, it must first determine what property is marital and what property is separate. *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997). Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage. MCL 552.19. Once a court has determined what property is marital, the whole of which constitutes the marital estate, only then may it apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances. See *Byington v Byington*, 224 Mich App 103, 110, 112-113; 568 NW2d 141 (1997). As a general principle, when the marital estate is divided "each party takes away from the marriage that party's own separate estate with no invasion by the other party." *Reeves*, 226 Mich App at 494.

Categorizing property as marital or separate is not always a simple task. *Id*. at 201. For example, income earned during a marriage is generally presumed to be marital property, but "an inheritance received by one spouse during the marriage and kept separate from marital property is separate property." See *id*., citing *Dart v Dart*, 460 Mich 573, 584-585; 597 NW2d 82 (1999). But when the facts indicate that a gift was intended for both parties, a court may consider such gift marital property. See *Heike v Heike*, 198 Mich App 289, 293; 497 NW2d 220 (1993); *Darwish v Darwish*, 100 Mich App 758, 775; 300 NW2d 399 (1980). In other instances, "separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property." *Cunningham*, 289 Mich App at 201 (quotation marks and citations omitted). The manner in which a married couple holds property does not necessarily mean property is separate or marital. *Id*. at 201-202.

## C. DISCUSSION

The trial court found that the 13 Mile Road property was Terry's separate property because Roseann intended for the property to be Terry's inheritance. Although Roseann testified that she wanted Terry to inherit the property, she also testified that she intended to gift the property to both Sharease and Terry, and there is no dispute that Roseann deeded the property via a quitclaim deed to both Sharease and Terry as tenants by the entirety during their marriage. Accordingly, the trial court clearly erred when it held that the 13 Mile Road property was Terry's separate property.

"A tenancy by the entirety is a type of concurrent ownership in real property, which is unique to married persons." *Canjar v Cole*, 283 Mich App 723, 730; 770 NW2d 449 (2009) (quotation marks and citation omitted).

> The classic basis for the tenancy by the entireties was the concept that "the husband and wife are but one person in the law[."] In a true tenancy by the entireties, each spouse is considered to own the whole and, therefore, is entitled to the enjoyment of the entirety and to survivorship. When real property is so held as tenants by the

entireties, neither spouse acting alone can alienate or encumber to a third person an interest in the fee of lands so held. *Neither the husband nor the wife has an individual, separate interest in entireties property*, and neither has an interest in such property which may be conveyed, encumbered or alienated without the consent of the other. [*Id*. (quotation marks and citation omitted) (emphasis added).]

When interpreting a deed, a court should "give effect to the parties' intent as manifested in the language of the instrument." *Mich Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 370; 699 NW2d 272 (2005) (quotation marks and citation omitted) (cleaned up).

In this case, the deed plainly stated that Roseann granted the 13 Mile Road property to Sharease and Terry as tenants by the entirety subject to her life estate. Contrary to the trial court's finding, Roseann's testimony that she intended for the property to be Terry's inheritance does not change the legal effect of the deed. Roseann executed the deed while Sharease and Terry were married, and gave them an interest in the property reserved exclusively for married couples. Roseann deeding the property in this manner showed Roseann's clear intent to grant both Sharease and Terry ownership of the 13 Mile Road property. And by the nature of their tenancy, neither Sharease nor Terry had a separate interest in the property. See *Canjar*, 283 Mich App at 730. While their ultimate divorce was likely not anticipated by Roseann at the time, it does not change the interest in the property that Roseann gave the couple. The plain language of the deed suggests that the property was a gift to both Sharease and Terry, not that it was intended for Terry alone as his inheritance from Roseann upon her death. Therefore, the trial court clearly erred when it ruled that the 13 Mile Road property was Terry's separate property and not part of the marital estate.

Terry argues that the trial court did not err by ruling that the 13 Mile Road property was his separate property because courts must consider how property enters a marriage to decide whether it is marital property. As discussed, Roseann deeded the property to both Terry and Sharease during their marriage. But Terry argues that this case is similar to *Reeves,* 226 Mich App at 492, 496-497, in which this Court held that, when a husband purchased property with his money before his marriage, and the property appreciated in value during the marriage, the property was his separate property and not part of the marital estate. Terry also cites *Woodington*, 288 Mich App at 358, in which this Court upheld a trial court's ruling that the property that a husband purchased with his sister's money during his marriage was not marital property.

But both *Reeves* and *Woodington* are distinguishable from this case because, in those cases, the properties were acquired and held as separate property. In *Reeves*, the husband purchased the property before his marriage and kept it separate throughout the marriage. *Reeves,* 226 Mich App at 492; 497. In *Woodington*, although the husband purchased the property during the marriage, he bought the property for his sister, using his sister's money. *Woodington*, 288 Mich App at 358. In contrast, in this case, Roseann gifted the 13 Mile Road property to Sharease and Terry by placing both their names on the deed while they were still married. Although Roseann and Terry testified that Roseann did this to separately convey the property to Terry as his inheritance, the deed plainly stated that Roseann granted the property to *both* Sharease and Terry, and Roseann gave the spouses an interest in the property that may be held *only by married individuals*. See *Canjar*, 283 Mich App at 730. Therefore, Terry never held or acquired the 13 Mile Road property separately from the marriage, unlike the parties in *Reeves* and *Woodington*.

Terry also relies on *Gates v Gates*, 256 Mich App 420, 427; 664 NW2d 231 (2003), in which the wife in a divorce action appealed a trial court's award of property to her former husband at a $0 value. In *Gates*, the husband testified that he and his wife titled his brother's house in their names because his brother filed for bankruptcy and could not obtain financing for a home. *Id*. at 427-428. The husband explained, however, that his brother provided the down payment for the house and made all mortgage payments. *Id*. at 428. The trial court awarded the property to the husband but attached no value to it, because, according to the court, the parties essentially held the property in trust for the husband's brother and contributed nothing to the property's value. *Id*. This Court affirmed the trial court's ruling, and held that the court's award of the property to the husband and its valuation of the property at $0 was fair and equitable. *Id*. at 428-429.

Although this case is similar to *Gates* in that the 13 Mile Road property was in both Sharease's and Terry's names, and another person, Roseann, lived at the property and increased its value, *Gates* is also distinguishable. Unlike in *Gates*, Sharease and Terry acquired the property as a gift from Roseann and did not hold the property in trust for another person. Moreover, contrary to Terry's argument, the Court in *Gates* did not rule that the property in dispute was the husband's separate property. Rather, the Court held that the trial court did not err by awarding the property to the husband and assigning it a $0 value. *Gates*, 256 Mich App at 428-429. Implicit in the trial court's award of the property to the husband in *Gates* was its finding that the house was marital property that needed to be divided. Otherwise, it would have been illogical for the wife to the challenge the trial court's valuation of the property on appeal. At the end of this Court's discussion of the property valuation issues, the Court held that "it is clear that the trial court's valuation of particular marital assets was not clearly erroneous." *Id*. at 432. To the extent that the Court in *Gates* considered the property to be marital, *Gates* supports our conclusion that the 13 Mile Road property was part of the marital estate because, like the spouses in *Gates*, Sharease and Terry acquired the property during their marriage.

Terry's arguments also ignore the general principle that "marital property is that which is acquired or earned during the marriage . . . ." See *Cunningham*, 289 Mich App at 201. Again, Roseann deeded the property through a quitclaim deed to both Sharease and Terry as tenants by the entirety during their marriage. Thus, both Sharease and Terry had an undivided interest in the entire property, subject only to Roseann's life estate. While the question of how much Sharease and Terry contributed to maintain the 13 Mile Road property or the amount of equity they built in the property may be relevant to the trial court's valuation of the asset and its ultimate division, it has no bearing on whether the property came to the parties as a result of their marriage. See *Gates*, 256 Mich App at 428. The cases Terry cites are inapposite because, in this case, neither spouse purchased the property, contributed money to the property, or increased its value, with their own funds or someone else's. Rather, Sharease and Terry acquired the property from Roseann as a gift.

Therefore, we reverse the trial court's holding classifying the 13 Mile Road home as separate property, vacate in part the trial court's judgment of divorce regarding the property division, and remand to the trial court to determine an equitable division of the asset. On remand, the trial court should consider the value of the property to the marital estate and reexamine its overall property division given that value. We also vacate the trial court's order requiring Sharease to execute a quitclaim deed for the 13 Mile Road property to Terry. On remand, the trial court may reinstate this order if necessary to equitably divide their property.

## III. SPOUSAL SUPPORT

Sharease also challenges the trial court's spousal support award. We review a trial court's factual findings relating to the award or modification of alimony for clear error. *Elahham*, 319 Mich App at 129. "Whether to award spousal support is in the trial court's discretion, and the 'trial court's decision regarding spousal support must be affirmed unless we are firmly convinced that it was inequitable.' " *Id*. (quotation marks and citation omitted). The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished. *Id*. A trial court decides an issue of spousal support based on what is just and reasonable under the circumstances of the case. *Id*. When deciding whether to award spousal support, courts consider a number of factors, including the "the source and amount of property awarded to the parties." *Id*. at 129-130 (quotation marks and citation omitted). In the court's spousal support award, it granted Sharease extra equity in the marital home as alimony-in-gross, an award that is inextricably tied to its property division. See *Staple*, 241 Mich App 562, 566; 616 NW2d 219 (2000). Therefore, on remand, the trial court should reconsider both the spousal support award and its property division in light of our holding that the 13 Mile Road property was marital property. After reconsidering the property division, if the court continues to believe that spousal support is appropriate, it should order spousal support that is fair and equitable. See *Elahham*, 319 Mich App at 129.

Reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Kristina Robinson Garrett